**WO** JL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Jason Carlos Pipkin,
Plaintiff,
v.
Town of Colorado City, et al.,
Defendants.

No. CV-26-08112-PCT-MTL (ASB)

**ORDER**

On May 18, 2026, pro se Plaintiff Jason Carlos Pipkin, who is proceeding in forma pauperis, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983. On May 26, 2026, Plaintiff filed a First Amended Complaint. In a June 17, 2026 Order, the Court dismissed the First Amended Complaint because Plaintiff had failed to comply with Rule 8 of the Federal Rules of Civil Procedure. The Court gave Plaintiff 30 days to file a second amended complaint that cured the deficiencies identified in the Order.

On June 30, 2026, Plaintiff filed a Second Amended Complaint (Doc. 11). The Court will dismiss the Second Amended Complaint with leave to amend.

**I. Statutory Screening of In Forma Pauperis Complaints**

Pursuant to 28 U.S.C. § 1915(e)(2), in a case in which a plaintiff has been granted in forma pauperis status, the Court shall dismiss the case "if the court determines that . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* litigant] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

If the Court determines that a pleading could be cured by the allegation of other facts, a pro se litigant is entitled to an opportunity to amend a complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc). The Court will dismiss Plaintiff's Second Amended Complaint for failure to state a claim, but because it may possibly be amended to state a claim, the Court will dismiss it with leave to amend.

. . . .

. . . .

## II. Second Amended Complaint

In his six-count Second Amended Complaint, Plaintiff sues the Town of Colorado City, Arizona; the City of Hildale, Utah; and Colorado City-Hildale Police Department (CCHPD)[1] Chief Robbins A. Radley, Lieutenant Mark O. Gower, Sergeant David Paul Wilkinson, Detective Jeffrey Scott Davis, and Officers Rachel A. Fischer and Garet Winkler. (Doc. 11 at 4-5.) Plaintiff names the individual Defendants in their official and individual capacities. Plaintiff brings claims regarding his arrest and ongoing criminal prosecution. He seeks compensatory and punitive damages, injunctive relief, and his attorney's fees and costs for this case.[2] (*Id.* at 29.)

Plaintiff alleges the following[3]:

At the relevant time, Plaintiff was employed at El Capitan High School in Colorado City. (*Id.* at 3.) On December 17, 2024, Defendant Davis served an Injunction Against Harassment on Plaintiff at El Capitan High School. (*Id.* ¶ 3.) The Colorado City Unified School District subsequently terminated Plaintiff's employment. (*Id.*)

On December 18, 2024, Defendants Fischer, Davis, and Winkler responded to Plaintiff's home in connection with allegations reported by Plaintiff's stepdaughter, A.M., who lived in the home with Plaintiff and his wife, A.M.'s mother. (*Id.* ¶¶ 4-5.) Defendant Fischer's Official Narrative for the incident states that A.M. "had been in contact with 'friends at school' regarding allegations against Plaintiff before calling 911; that [A.M.] had 'let it go until . . . she "f[ound] the paperwork involving [Plaintiff] and hear[d] stories from her friends at school regarding [Plaintiff]'; and that A.M. stated she 'believe[d]

---

[1] Plaintiff states that Colorado City and Hildale City jointly operate the Colorado City-Hildale Police Department.

[2] Plaintiff is not an attorney and may not recover attorney's fees for representing himself.

[3] Many of Plaintiff's allegations are irrelevant, and the Second Amended Complaint is replete with unnecessary legal arguments and conclusions, which the Court does not accept as true. *See Iqbal*, 556 U.S. at 678. The Court presents only those allegations that are necessary to assess Plaintiff's claims.

everything those girls say.'" (*Id.*) "[F]inding the paperwork" is an apparent reference to the Injunction Against Harassment that Defendant Davis served on Plaintiff on December 17, 2024. (*See id.* ¶ 16.)

Children's Justice Centers conducted a forensic interview of A.M., during which A.M. described "repeated physical contact by Plaintiff" that "occurr[ed] regularly and on multiple occasions." (*Id.* ¶ 9.) A.M. "introduced a religious context for the alleged conduct," stating, "in substance, that her religion holds that it is acceptable for older men to marry young girls." (*Id.* ¶ 12.) The interviewer asked A.M. "who led that religion," and A.M. identified her grandfather as the head of the religion she described. (*Id.*) During the interview, A.M. also made a reference to the contents of Plaintiff's cell phone. (*Id.* ¶ 21.) Defendant Gower summarized A.M.'s forensic interview in a January 10, 2025 synopsis. (*Id.* ¶¶ 21, 28.) Defendant Gower's synopsis was "the primary factual document supporting [Plaintiff's] criminal prosecution." (*Id.* ¶ 28.)

On January 22, 2025, Defendant Davis went to Plaintiff's home and conducted a custodial interrogation of Plaintiff. (*Id.* ¶ 14.) During the "pre-arrest phase of the encounter," Defendant Davis interrogated Plaintiff specifically about "The Priesthood at The Work Church of Centennial Park," soliciting information about the church's internal leadership structure. (*Id.* ¶ 15.) Plaintiff declined to provide information about the church's internal affairs. (*Id.*) Defendant Davis asked Plaintiff why A.M. would be upset about finding the Injunction Against Harassment paperwork. (*Id.*) Plaintiff invoked his right to counsel, but Defendant Davis did not cease questioning. (*Id.* ¶ 16.) Defendant Davis asked Plaintiff if he had ever been to the "Purgatory Correctional Facility," that is, the Washington County Jail. (*Id.* ¶ 17.) Plaintiff did not respond. (*Id.*) Defendant Davis repeated the question, and Plaintiff answered, "Yes." (*Id.*) Defendant Davis directed Plaintiff to a patrol vehicle, contacted Defendant Gower, and arrested Plaintiff. (*Id.*)

Plaintiff was booked into Washington County Jail and subsequently charged by information with three counts of forcible sexual abuse. (*Id.* ¶ 18.) The charges remain

pending.[4] (*Id.*)

On January 23, 2025, Defendants Davis and Winkler obtained and executed a search warrant for Plaintiff's cell phone. (*Id.* ¶ 7.) Defendant Davis also questioned Plaintiff's wife, A.M.'s mother, about a "religious meeting" at which Plaintiff, his wife, and A.M. had "received instruction from the brethren of The Work Church of Centennial Park." (*Id.*)

The CCHPD operates under Lexipol Policy 600, the department's criminal investigation policy, which Defendant Radley adopted and is responsible for implementing. (*Id.* ¶ 1.) Section 600.3.1 provides that investigating officers "shall" collect and preserve all evidence reasonably likely to be relevant to a criminal investigation. (*Id.*) Section 600.3.1(b)(4) specifically requires officers to "conduct all necessary witness interviews and pursue all investigative leads reasonably likely to provide material evidence." (*Id.*) Section 600.6 prohibits closing or discontinuing an investigation until all reasonable investigative steps have been exhausted. (*Id.*) According to Plaintiff, Policy 600 does not permit officers to "collect evidence favorable to the accuser while declining to collect identified evidence favorable to the accused" or to "decline investigative leads documented in their own official narratives." (*Id.* ¶ 2.)

El Capitan High School is equipped with surveillance cameras that recorded activity on campus during the period relevant to the student complaints against Plaintiff. (*Id.* ¶ 24.) Plaintiff "specifically and affirmatively identified this surveillance footage to law enforcement as exculpatory evidence," and under Lexipol §§ 600.3.1 and 600.3.1(b)(4), any officer to whom Plaintiff made this identification was required to collect and preserve that footage. (*Id.* ¶ 25.) No CCHPD officer ever requested the footage from El Capitan High School or from the Colorado City Unified School District, and the footage was subsequently overwritten and permanently destroyed. (*Id.* ¶ 26.)

---

[4] Plaintiff has not provided any additional details regarding the status of his ongoing criminal proceeding, but according to the docket in his case, a review hearing is scheduled for November 18, 2026. *See* https://legacy.utcourts.gov/cal/details.php?ref=13229579&d=2026-11-18&loc= 2714&tl=10%3A30+AM&ct=D%26rp%3Dsearch%26ret%3Dt.101p.010loc.101all.010d.101all.010p.101PIPKIN [https://perma.cc/P7YQ-BXRA].

On April 16, 2026, Defendant Wilkinson stated on a recorded call that collecting surveillance footage was "not the police department's job" and was not Defendant Fischer's responsibility." (*Id.* ¶ 27.) Defendant Wilkinson "characterized this as the department's standard practice, not a one-time judgment call." (*Id.*)

In Count One, Plaintiff asserts a Fourteenth Amendment due process claim against Defendants Town of Colorado City, Hildale City, Fischer, Davis, Gower, Wilkinson, and Radley for "deliberate construction of [a] one-sided official record." (*Id.* at 18.) In Count Two, Plaintiff asserts a Fourteenth Amendment due process claim against Defendants Town of Colorado City, Hildale City, Fischer, and Davis for "Brady/Tennison – pre-prosecution suppression of exculpatory evidence." (*Id.* at 20.) In Count Three, Plaintiff asserts a Fourth Amendment unlawful seizure claim against Defendants Davis and Winkler. (*Id.* at 22.) In Count Four, Plaintiff asserts a Fourteenth Amendment due process claim against Defendant Davis for "post-invocation coercive interrogation." (*Id.* at 23.) In Count Five, Plaintiff asserts a First Amendment retaliatory arrest claim against Defendants Town of Colorado City, Hildale City, Davis, and Radley. (*Id.* at 25.) In Count Six, Plaintiff asserts a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against the Town of Colorado City and Hildale City.

## III. Failure to State a Claim

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury because of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

. . . .

. . . .

**A. Individual versus Official Capacity**

A suit against a defendant in his or her *individual* capacity seeks to impose personal liability upon the official. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). For a person to be liable in his or her individual capacity, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). By comparison, a suit against a defendant in his or her *official* capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky*, 473 U.S. at 165. That is, the real party in interest is not the named defendant, but the entity that employs the defendant. *Id.* To bring a claim against an individual in his official capacity, a plaintiff must show that the constitutional deprivation resulted from the entity's policy, custom, or practice. *Id.*; *Monell*, 436 U.S. at 694.

As noted, Plaintiff sues the individual Defendants in both their individual and official capacities. The real party in interest for Plaintiff's official-capacity claims is the entity that employs the individual Defendants, that is, the Town of Colorado City or Hildale City. Accordingly, Plaintiff's official-capacity claims against the individual Defendants are duplicative of his *Monell* claims against the Town of Colorado City and Hildale City. The Court will dismiss Plaintiff's official-capacity claims against Defendants Radley, Gower, Wilkinson, Davis, Fischer, and Winkler.

**B. Substantive Due Process (Counts One and Four)**

In Counts One and Four, Plaintiff purports to bring claims for violation of his right to substantive due process. "To state a substantive due process claim, the plaintiff must show as a threshold matter that a state actor deprived [him] of a constitutionally protected life, liberty or property interest." *Shanks v. Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008). "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (the substantive due process guarantee protects against government power arbitrarily and oppressively exercised). The "Due Process Clause of the Fourteenth

JDDL

Amendment protects against any government conduct that 'shocks the conscience.'" *Crowe v. City of San Diego*, 608 F.3d 406, 431 (9th Cir. 2010) (citation omitted); *see also Krainski v. Nevada*, 616 F.3d 963, 969 (9th Cir. 2010) ("The guarantee of substantive due process provides heightened protection against government interference with certain fundamental rights and liberty interests.") (citation and quotation marks omitted); *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2008) ("Substantive due process forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with the rights implicit in the concept of ordered liberty.'") (citations and quotation marks omitted).

The Supreme Court has "always been reluctant to expand the concept of substantive due process," *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998), and protection from governmental action provided by substantive due process has most often been reserved for the vindication of fundamental rights, *see Albright v. Oliver*, 510 U.S. 266, 272 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Lewis*, 523 U.S. 842. Thus, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). To the extent that Plaintiff alleges a substantive due process claim based on a lack of probable cause for his arrest, his claims are covered by the Fourth Amendment. *See Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (to state a § 1983 claim for false arrest, a plaintiff must show that defendants made the arrest without probable cause or other justification); *Barry v. Fowler*, 902 F.2d 770, 773 n.5 (9th Cir. 1990) (noting that because the defendant officer had probable cause to arrest the plaintiff for one charge,

the arrest was not unconstitutional even if the officer lacked probable cause for another charge); *Hart*, 450 F.3d at 1070 (stating that "probable cause for an arrest 'may be satisfied by an indictment returned by a grand jury'" and that, absent a challenge to the validity of the indictment itself, an indictment "extinguish[es] the inquiry into [a] false arrest claim") (quoting *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) ("The Fourth Amendment requires that arrest warrants be based 'upon probable cause, supported by Oath or affirmation'—a requirement that may be satisfied by an indictment returned by a grand jury.")).

**1. Count One**

The "shocks-the-conscience" standard is, depending on the circumstances, met either by showing that a defendant (1) acted with "deliberate indifference" or (2) with a "purpose to harm" for reasons unrelated to legitimate law enforcement objectives. *Porter v. Osborn*, 546 F.3d 1132, 1137 (9th Cir. 2008) (citing *Lewis*, 523 U.S. at 846). Under the first situation, if a defendant is in a position "[w]here actual deliberation is practical," then his deliberate indifference to the harm he caused may be sufficient to "shock the conscience." *Gantt v. City of Los Angeles*, 717 F.3d 702, 707-08 (9th Cir. 2013) (quoting *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)). "On the other hand, when an officer makes a snap judgment because of an escalating situation," then the courts apply the "purpose-to-harm" standard. *Id.* (quoting *Wilkinson*, 610 F.3d at 554). In determining whether deliberate indifference is sufficient to shock the conscience, or whether the more demanding standard of purpose to harm is required, "the 'critical consideration [is] whether the circumstances are such that actual deliberation is practical.'" *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998)) (alteration in original).

Here, the deliberate indifference standard applies because Plaintiff alleges that over a period of weeks, Defendants obtained and failed to disclose exculpatory evidence to the prosecutor. *See Tennison v. City and County of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009) ("[W]hether to disclose or withhold exculpatory evidence is a situation in which 'actual deliberation is practical.'") (quoting *Porter*, 546 F.3d at 1137). At the pleading

stage, a plaintiff is not required to establish that police officers acted in bad faith in withholding evidence. *See id.* at 1090.

Plaintiff contends that "[t]he Fourteenth Amendment's substantive due process component prohibits executive conduct that shocks the judicial conscience, including the deliberate construction of a false or one-sided official record used to deprive a person of liberty." (Doc. 11 at 18.) Plaintiff further asserts that "[a]n officer who deliberately builds an official record excluding exculpatory evidence the officer personally documented — and uses that record to support prosecution — violates the accused's substantive due process rights." (*Id.*) He alleges that Defendants Fischer, Davis, Gower, Wilkinson, and Radley's "deliberately constructing a record that excluded all identified exculpatory evidence and then supporting prosecution on that record [] shocks the conscience." (*Id.* at 19.) In support of his claim, Plaintiff cites *County of Sacramento v. Lewis*; *Rochin v. California*, 342 U.S. 165 (1952); *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006); and *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) (en banc).

In *Lewis*, a police officer in a patrol vehicle followed a motorcycle carrying a driver and a passenger, Lewis, on a high-speed chase. 523 U.S. at 837. The motorcycle tipped over, and the patrol vehicle skidded into the motorcycle. *Id.* Lewis was pronounced dead at the scene. *Id.* Lewis's estate alleged that the officer's actions in causing Lewis's death "were an abuse of executive power so clearly unjustified by any legitimate objective of law enforcement as to be barred by the Fourteenth Amendment." *Id.* at 840. The Supreme Court determined that the Fourth Amendment did not "cover" the estate's claim and that the estate's allegation that the officers had acted in "conscious disregard" of Lewis's life did not rise to the level of culpability necessary to implicate a substantive due process theory of relief. *See id.* at 854.

In *Rochin*, police illegally broke into the plaintiff's house, struggled to open his mouth and remove what was there, and forcibly extracted his stomach's contents. 342 U.S. at 166, 172. The Supreme Court found the forced pumping of a suspect's stomach enough to offend due process as conduct "that shocks the conscience." *Id.* at 172-73. Neither

*Lewis* nor *Rochin* supports Plaintiff's assertion that "deliberate construction of a false or one-sided official record" amounts to a substantive due process violation; the injurious conduct at issue in those cases bears no resemblance to the misconduct alleged here. Moreover, as the Supreme Court observed in *Lewis*, the substantiative due process claim in *Rochin* was formulated and applied long before *Graham v. Connor*, 490 U.S. 386 (1989), and "today would be treated under the Fourth Amendment, albeit with the same result." 523 U.S. at 849 n.9.

In *Hart*, the plaintiff alleged that he was arrested in his home without a warrant and without probable cause. 450 F.3d at 1065. *Hart* did not involve a claim that an officer excluded exculpatory evidence and used that record to support a prosecution. And in *Devereaux*, the plaintiff alleged that Washington Department of Social and Health Services social workers withheld exculpatory evidence in connection with an investigation into alleged sexual abuse by plaintiff of his foster children. 263 F.3d at 1073, 1079. The Ninth Circuit noted that the plaintiff did not argue that *Brady v. Maryland*, 373 U.S. 83 (1963), applied to social workers at the investigative and charging stages, and in any event, "a *Brady* violation cannot in itself support a deliberate-fabrication-of-evidence claim." *Id.* at 1079. The Ninth Circuit further determined that Plaintiff had not shown that one of the social workers knew or should have known that the plaintiff was innocent, and the social worker did not use investigative techniques that were so coercive and abusive that she knew or should have known that they would yield false information. *Id.* at 1079-80.[5] *Devereaux*

---

[5] Plaintiff's citation to multiple cases that do not stand for the propositions for which he cites them suggests that he might have used artificial intelligence to prepare his Second Amended Complaint, which produced "hallucinations." *See Braica v. Frankowski*, 826 F. Supp. 3d 286, 294 (D. Conn. 2025) (citation omitted) (defining hallucination in the context of AI-assisted legal research "as one of three errors: (1) fabricated cases (whether a nonexistent case name and citation, an existing case name with an invented citation, or a real citation that leads to a wholly unrelated decision); (2) fabricated quotations from actual cases; and (3) misstatements of law (representations of legal rules, standards, or holdings that are inaccurate, incomplete, or unsupported by any real authority, including AI-generated summaries that distort or materially alter what a case actually decided)."). Under Rule 11(b) of the Federal Rules of Civil Procedure, "[b]y presenting to the court a pleading,

JDDL

written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Federal Rule of Civil Procedure 11 imposes obligations upon both pro se and represented litigants. *See id.* Thus, when pro se litigants violate Rule 11(b), they can be sanctioned. *See* Fed. R. Civ. P. 11(c) (stating that "an appropriate sanction" may be imposed upon any "party").

District courts have recognized that the use of artificial intelligence in litigation "presents very serious dangers that are 'fundamentally incompatible with our justice system' predicated on 'integrity and honesty from parties.'" *Burnside v. Verdick*, 832 F. Supp. 3d 882, 884 (S.D. Iowa 2026) (quoting *Mills v. City of St. Louis*, No. 4:25-cv-1219-MTS, 2025 WL 3470293, at *1 (E.D. Mo. Dec. 3, 2025)). "Providing the Court with . . . forged quotations cannot be squared with Rule 11(b) and [e]very filing in a federal court that contains citations to phony case law amounts to a violation of Rule 11(b) of the Federal Rule of Civil Procedure." *Id.* (internal quotation marks and citation omitted). Thus, "[p]resentation of inaccurate authorities in pleadings resulting from AI subject[s] the signing party to sanctions." *Brownfield v. Cherokee County Sch. Dist. No. 35*, No. CIV-21-312-GLJ, 2026 WL 777230, at *3 (E.D. Okla. Mar. 19, 2026); *see also Chumpitaz-Morales v. Bondi*, No. 25-9527, 2026 WL 382144, at *4 n.3 (10th Cir. Feb. 11, 2026) (finding the pro se parties' brief misrepresented the holdings of several cases and the court may sanction parties who make such misrepresentations); *Harris v. Take-Two Interactive Software, Inc.*, No. 24-cv-01508-PAB-MDB, 2025 WL 1310122, at *2 n.3 (D. Colo. May 6, 2025) ("The use of fictitious quotes or cases in filings may subject a party, including a pro se party, to sanctions pursuant to Federal Rule of Civil Procedure 11 as 'pro se litigants are subject to Rule 11 just as attorneys are.'") (quoting *Rasmussen v. Burnett*, No. 24-cv-01727-SKC-KAS, 2025 WL 808364, at *3 (D. Colo. March 12, 2025)).

Plaintiff is warned that he is responsible for conducting reasonable diligence before

JDDL

is inapposite.

Plaintiff fails to explain how Defendants' failure to disclose to the prosecutor exculpatory evidence of which he has knowledge amounts to a due process violation. *Cf. Raley v. Ylst*, 444 F.3d 1085 (9th Cir.), *amended by* 470 F.3d 792 (9th Cir. 2006) (finding no *Brady* violation where evidence allegedly withheld was contained in the petitioner's medical records from his pretrial confinement; petitioner "knew that he had made frequent visits to medical personnel at the jail" and "knew that he was taking medication that they prescribed for him"; and "[t]hose facts were sufficient to alert defense counsel to the probability that the jail had created medical records relating to" the petitioner). In any event, as discussed below, Plaintiff's allegations relating to his ongoing prosecution—including officers' presentation or alleged suppression of evidence to prosecutors—fail to state a claim and have not accrued because he has not yet gone to trial. Plaintiff fails to state a substantive due process claim in Count One.

**2. Count Four**

"A person subjected to coercive interrogation techniques can bring a substantive due process claim under the Fourteenth Amendment." *Tobias v. Arteaga*, 996 F.3d 571, 584 (9th Cir. 2021) (citing *Stoot v. City of Everett*, 582 F.3d 910, 928 (9th Cir. 2009)). The Supreme Court has described "police torture or other abuse" as the type of claim cognizable under the Fourteenth Amendment. *Id.* (*quoting Chavez v. Martinez*, 538 U.S. 760, 774, (2003) (plurality opinion)). However, "police conduct need not include physical violence to violate substantive due process." *Id.* (citation omitted). "[P]sychological coercion is sufficient." *Id.* (citation omitted).

Plaintiff alleges only that after he invoked his right to counsel, Defendant Davis twice asked Plaintiff if he had ever been to the "Purgatory Correctional Facility," that is, the Washington County Jail. Such conduct cannot be reasonably construed as physical or psychological coercion. *Cf., e.g.*, *Crowe*, 608 F.3d at 431 (finding police conduct coercive

---

filing documents with this Court, which includes ensuring that all citations are accurate. Failure to do so may subject Plaintiff to sanctions under Rule 11.

where officers interrogated three 14- and 15-year-old boys on four occasions, with at least one session lasting more than six hours and falsely told one boy that they had found blood in his room and had lifted his fingerprints off the blood stains and that "he would get help rather than go to jail" if he confessed); *Cooper v. Dupnik*, 963 F.2d 1220, 1228-33, 1248-50 (9th Cir. 1992), *overruled on other grounds by Chavez*, 538 U.S. at 773 (finding a cognizable substantive due process violation where officers deliberately ignored an adult suspect's repeated invocations of his right to counsel, isolated him at the police station, and subjected him to "hours" of verbal interrogation where he was "hammered, forced, pressured, emotionally worn down, stressed, and infused with a sense of helplessness and fear"). Plaintiff fails to state a substantive due process claim in Count Four, and this claim will be dismissed.

### C. Pre-Prosecution Suppression of Exculpatory Evidence (Count Two)

In Count Two, Plaintiff alleges that Defendants Fischer and Davis violated his due process rights by suppressing material exculpatory evidence before and during his prosecution. (Doc. 11 at 20.) Specifically, Plaintiff asserts that his prosecution "proceeds on an official record that was constructed without disclosing the only documented lead pointing to the accuser's role in generating the complaints against Plaintiff." (*Id.* at 21.)

The Ninth Circuit has held that a police officer may be liable under the Fourteenth Amendment if, during a criminal defendant's pretrial detention, the officer withholds or conceals exculpatory evidence from the prosecutor with deliberate indifference to or a reckless disregard of Plaintiff's rights or the truth. *See Tatum v. Moody*, 768 F.3d 806, 815 (9th Cir. 2014). But a claim for pretrial withholding of exculpatory evidence only accrues if the criminal defendant does not go to trial. *See Strickler v. Greene*, 527 U.S. 263, 281 (1999) ("[T]here is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."); *see also Merritt v. Arizona*, 425 F. Supp. 3d 1201, 1231 (D. Ariz. 2019) (noting that *Tatum* allowed a due process claim for unjustified loss of liberty due to the investigative officers' failure to disclose potentially dispositive exculpatory evidence to the

prosecutors during a suspect's pretrial detention but did not decide whether *Brady* extends to a situation where the suspect never goes to trial) (citation omitted).

Here, Plaintiff is awaiting trial in his criminal case; any potential claim based on pretrial suppression of exculpatory evidence therefore has not accrued. And Plaintiff fails to identify any material exculpatory evidence that any named Defendant withheld or suppressed *after* his arrest. The Court will dismiss Count Two.

**D. Unlawful Search and Seizure (Count Three)**

The Fourth Amendment prohibits "unreasonable" searches and seizures. In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that a police officer violates the Fourth Amendment if he "recklessly or knowingly includes false material information in, or omits material information from, a search warrant affidavit." *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1295 (9th Cir. 1999). "[I]f the allegedly false statement is necessary to the finding of probable cause, . . . the search warrant must be voided and the fruits of the search excluded." *Franks*, 438 U.S. at 155-56. "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). But there is an exception to this general rule where a warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 547 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).

A *Franks* violation can give rise to a civil action under 42 U.S.C. § 1983. *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002) (a coroner who "deliberately lied about the autopsy in the autopsy report" could be held liable under § 1983); *see also Barlow v. Ground*, 943 F.2d 1132, 1136-37 (9th Cir. 1991) (police officers may be held liable under § 1983 "if they made false reports to the prosecutor, omitted material information from the reports, or otherwise prevented the prosecutor from exercising independent judgment").

In addition, "[a] seizure conducted pursuant to a warrant obtained by judicial

deception violates the Fourth Amendment." *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) (citing *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (per curiam)). To state a Fourth Amendment claim based on judicial deception in obtaining a warrant, a plaintiff must allege that (1) the defendant deliberately or recklessly made false statements in the affidavit and (2) the falsehoods or omissions were material to the finding of probable cause. *See Chism v. Washington State*, 661 F.3d 380, 386 (9th Cir. 2011); *see also Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011) (to prevail on a Fourth Amendment claim based on judicial deception in obtaining a warrant, a plaintiff must show that any misrepresentations or omissions were (1) "material to the finding of probable cause" and (2) "made intentionally or with reckless disregard for the truth"). Here, "materiality" means that, if the individual seeking a warrant had been truthful, the warrant would not have issued. *Butler*, 281 F.3d at 1026. Omissions or falsehoods are material if the judge could not have "issued the warrant in the absence of the contested statements." *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995). "Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009) (quoting *United States v. Smith*, 588 F.2d 737, 740 (9th Cir. 1978)).

Plaintiff alleges that his phone was seized and searched pursuant to a warrant. Plaintiff does not allege facts to support that Defendant Davis deliberately or recklessly withheld *material* information in the probable cause affidavit supporting the warrant. He therefore fails to state a claim in Count Three, and this count will be dismissed.

**E. Retaliatory Arrest (Count Five)**

Plaintiff asserts a retaliatory arrest claim in Count Five against Defendants Davis, Radley, Town of Colorado City, and Hildale City.

**1. Legal Standards**

To recover under § 1983 for retaliatory arrest, a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in

the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action). *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (citations omitted). "[A] plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

In *Nieves*, the Supreme Court adopted the requirement that a plaintiff asserting a retaliatory arrest claim prove the absence of probable cause for his arrest. *Id.* at 404. "Absent such a showing, a retaliatory arrest claim fails." *Id.* "[I]f the plaintiff establishes the absence of probable cause," the plaintiff "must show that the retaliation was a substantial or motivating factor behind the [arrest], and, if that showing is made, the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation." *Id.* (citations omitted).

The Supreme Court in *Nieves* observed that "[a]lthough probable cause should generally defeat a retaliatory arrest claim, a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 406. Thus, if a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been, the no-probable-cause requirement will not apply. *Id.* "Because this inquiry is objective, the statements and motivations of the particular arresting officer are 'irrelevant.'" *Id.* at 407. "After making the required showing, the plaintiff's claim may proceed in the same manner as claims where the plaintiff has met the threshold showing of the absence of probable cause." *Id.* at 407-08.

In *Gonzalez v. Trevino*, 602 U.S. 653 (2024), the Supreme Court clarified that to fall within the *Nieves* exception, "a plaintiff must produce evidence to prove that his arrest occurred in 'circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so.'" *Id.* at 658 (quoting *Nieves*, 587 U.S. at 406). The Supreme Court observed that the only "express limit [it] placed on the sort of

evidence a plaintiff may present for that purpose is that it must be objective in order to avoid 'the significant problems that would arise from reviewing police conduct under a purely subjective standard.'" *Id.* (quoting *Nieves*, 587 U.S. at 407).

**2. Probable Cause for Arrest**

"'Probable cause exists if the arresting officers 'had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime.'" *Gravelet-Blondin*, 728 F.3d at 1097 (quoting *Maxwell v. County of San Diego*, 697 F.3d 941, 951 (9th Cir. 2012)); *see also Edgerly v. City & County of S.F.*, 599 F.3d 946, 953 (9th Cir. 2010) ("To determine whether the Officers had probable cause at the time of the arrest, we consider 'whether at that moment the facts and circumstances within [the Officers'] knowledge . . . were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'") (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). When determining whether probable cause exists, the Court looks to the totality of the circumstances known to the arresting officer at the time of the arrest. *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008) (internal quotation marks and citation omitted).

"Probable cause is an objective standard and the officer's subjective intention in exercising his discretion to arrest is immaterial in judging whether his actions were reasonable for Fourth Amendment purposes." *Id.* "[A]n arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *District of Columbia v. Wesby*, 583 U.S. 48, 54 n.2 (2018); *see also Edgerly*, 599 F.3d at 954 ("[P]robable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest"); *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 952 (9th Cir. 2003), *overruled on other grounds by Edgerly*, 599 F.3d at 956 n. 14 (stating that where any potential crime is supported by probable cause, the arrest is justified).

Probable cause to initiate a criminal proceeding "is not a high bar" and "requires only the kind of fair probability on which reasonable and prudent [people,] not legal

technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (internal quotation marks omitted) (alteration in original) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)). A grand jury's indictment in a criminal case establishes a rebuttable presumption of probable cause for the charges. *See Hart*, 450 F.3d at 1070. In general, then, the "'[f]iling of a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exist[ed] at that time.'" *Harper v. City of Los Angeles*, 533 F.3d 1010, 1027 (9th Cir. 2008) (quoting *Smiddy*, 665 F.2d at 266-67). And probable cause "may exist despite the fact that the charges are subsequently dismissed or the accused is found to be innocent." *Hockett v. City of Tucson*, 678 P.2d 502, 505 (Ariz. Ct. App. 1983).

Plaintiff does not sufficiently describe the circumstances surrounding his arrest to support that Defendants lacked probable cause to arrest him for *any* crime. Furthermore, Plaintiff's claims are primarily based on his mistaken belief that Defendants were required to seek out exculpatory evidence even if they had probable cause for his arrest. "[P]olice are not required to believe to an absolute certainty, or by clear and convincing evidence, or even by a preponderance of the available evidence that a suspect has committed a crime. All that is required is a fair probability, given the totality of the evidence, that such is the case." *Garcia v. County of Merced*, 639 F.3d 1206, 1209 (9th Cir. 2011). Under this standard, "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1147 (9th Cir. 2012) (internal quotation marks and citation omitted); *see also O'Doan v. Sanford*, 991 F.3d 1027, 1043 (9th Cir. 2021) ("Supreme Court precedent is clear that 'probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts'") (quoting *Wesby*, 583 U.S. at 61). And to the extent that Plaintiff was subsequently indicted by a grand jury, the grand jury's indictment is prima facie evidence of probable cause.

**3. *Nieves* Exception**

Plaintiff has not alleged facts to support that the *Nieves* exception to the probable cause requirement applies to his arrest. Plaintiff fails to allege that he was arrested in circumstances in which officers have probable cause to make arrests but typically exercise their discretion not to do so. Rather, Plaintiff relies on *Lozman v. City of Riviera Beach*, 585 U.S. 87 (2018), for the proposition that "where an arrest is part of an 'official municipal policy of intimidation,' the existence of probable cause does not defeat the retaliation claim." (Doc. 11 at 25.) Plaintiff's reliance on *Lozman* with respect to his retaliatory arrest claim against Defendant Davis is misplaced, however, because, as the Supreme Court recognized in *Nieves, Lozman*'s holding is "limited . . . to arrests that result from official policies of retaliation." *Nieves*, 587 U.S. at 398. The Court will dismiss Count Five.

**F. *Monell* Claims**

"A municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents." *Long v. County of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir. 2006). The actions of individuals may support municipal liability only if the employees were acting pursuant to an official policy or custom of the municipality. *Botello v. Gammick*, 413 F.3d 971, 978-79 (9th Cir. 2005). A § 1983 claim against a municipal defendant "cannot succeed as a matter of law" unless a plaintiff: (1) contends that the municipal defendant maintains a policy or custom pertinent to the plaintiff's alleged injury; and (2) explains how such policy or custom caused the plaintiff's injury. *Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006) (affirming dismissal of a municipal defendant pursuant to Fed. R. Civ. P. 12(b)(6)).

Because Plaintiff fails to state a claim for an underlying constitutional violation, his *Monell* claims necessarily fail. The Court will therefore dismiss the Town of Colorado City and Hildale City.

**IV. *Younger* Abstention**

Even if Plaintiff had stated a claim, the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), prohibits the Court from directly interfering with ongoing

criminal proceedings in state court and applies while the case works its way through the state appellate process. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369 (1989) ("For *Younger* purposes, the State's trial-and-appeals process is treated as a unitary system."); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975) ("Virtually all of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings, just as surely as they would if such intervention occurred at or before trial."). A federal court must abstain from exercising jurisdiction over an action for damages under § 1983 when a "federal plaintiff brings a constitutional challenge to a state proceeding when that proceeding is ongoing; the state proceeding is of a judicial nature, implicating important state interests; and the federal plaintiff is not barred from litigating his federal constitutional issues in that proceeding." *Gilbertson v. Albright*, 381 F.3d 965, 984 (9th Cir. 2004). "When damages are sought and *Younger* principles apply, it makes sense for the federal court to refrain from exercising jurisdiction temporarily by staying its hand until such time as the state proceeding is no longer pending." *Id.* at 981. Additionally, in such circumstances, a stay or abstention until resolution of the criminal matter would be appropriate because, if he is convicted in his criminal case, Plaintiff may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his conviction, continued imprisonment or sentence unless the conviction or sentence is reversed, expunged or called into question by issuance of a writ of habeas corpus. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

## V. Leave to Amend

For the foregoing reasons, the Court will dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief may be granted. Within 30 days, Plaintiff may submit a third amended complaint to cure the deficiencies outlined above. The Clerk of Court will mail Plaintiff a court-approved form to use for filing a third amended complaint. If Plaintiff fails to use the court-approved form, the Court may strike the third amended complaint and dismiss this action without further notice to Plaintiff.

Plaintiff must clearly designate on the face of the document that it is the "Third

Amended Complaint." The third amended complaint must be retyped or rewritten in its entirety on the court-approved form and may not incorporate any part of the original Complaint or prior Amended Complaints by reference. Plaintiff may include only one claim per count.

A third amended complaint supersedes the original Complaint and prior Amended Complaints. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the Court will treat the original Complaint and prior Amended Complaints as nonexistent. *Ferdik*, 963 F.2d at 1262. Any cause of action that was raised in the original Complaint or prior Amended Complaints and that was voluntarily dismissed or was dismissed without prejudice is waived if it is not alleged in a third amended complaint. *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

## VI. Warnings

### A. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### B. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik*, 963 F.2d at 1260-61 (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) The Second Amended Complaint (Doc. 11) is **dismissed** for failure to state a claim. Plaintiff has **30 days** from the date this Order is filed to file a third amended complaint in compliance with this Order.

. . . .

JDDL

(2) If Plaintiff fails to file a third amended complaint within 30 days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action without prejudice and deny any pending unrelated motions as moot.

Dated this 9th day of November, 2026.

Michael T. Liburdi
United States District Judge